IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
CALVIN PHILLIPS,              )     CIVIL NO. 12-00384 LEK-RLP
                             )
          Plaintiff,         )
                             )
     vs.                     )
                             )
RAY MABUS, in his capacity as )
the Secretary of the Navy,   )
                             )
          Defendant.         )
_____ )
```

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Ray Mabus's[1] ("Defendant") Motion for Summary Judgment ("Motion"), filed on April 18, 2013. [Dkt. no. 17.] Plaintiff Calvin Phillips ("Plaintiff") filed his memorandum in opposition on July 15, 2013, and Defendant filed his reply on July 22, 2013. [Dkt. nos. 24, 27.] This matter came on for hearing on August 5, 2013. Appearing on behalf of Defendant was Assistant United States Attorney Thomas Helper, and appearing on behalf of Plaintiff were Cleyton Ikei, Esq., and Jerry Chang, Esq. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Defendant's Motion is HEREBY GRANTED for the reasons set forth below.

---

[1] Ray Mabus is sued in his capacity as the Secretary of the Navy.

## BACKGROUND

Plaintiff filed his Complaint for Declaratory Relief and Damages ("Complaint") on July 6, 2012.  The Complaint alleges that, in December 2010, Plaintiff applied for a GS-9 grade, Financial Management Analyst ("FMA") position with the Department of the Navy ("the Navy") but was not selected for the position. Plaintiff alleges that he was not selected because of discrimination against his race (Caucasian), gender (male), age (over the age of fifty), and disability status.  He also alleges that he was not selected because of retaliation for his statement to one of the members of his interview panel that he was filing a discrimination complaint based on how he was treated during his interview.  Plaintiff filed his informal complaint on February 4, 2011.  [Complaint at ¶¶ 1, 9, 11, 14.]

On April 11, 2011, after the position was offered to a non-Caucasian female candidate, Plaintiff filed a formal discrimination complaint.  Plaintiff filed the instant action after more than 180 days passed from the filing of the formal complaint.  [Id. at ¶¶ 13, 15-16.]

Plaintiff seeks: a declaratory judgment that his non-selection violated his "right to be free from workplace discrimination on the basis of his race, gender, age, disability status and reprisal;" an order awarding him the FMA position as of January 19, 2011; an award of past and future lost wages and

2

benefits; compensatory damages; attorney's fees and costs; and any other appropriate relief.  [Id. at pg. 6.]

**I.   <u>Motion</u>**

In the instant Motion, Defendant seeks summary judgment on all claims in the Complaint.

Defendant first contends that Plaintiff cannot prevail on his claim under the Rehabilitation Act of 1973, 29 U.S.C. § 791(g), for disability discrimination because he is not disabled for purposes of the Americans with Disabilities Act ("ADA").  [Mem. in Supp. of Motion at 4-6.]  Plaintiff's purported disabilities are a lung condition and an eye condition. [Def.'s Concise Statement of Facts ("Def.'s CSOF"), filed 4/18/13 (dkt. no. 18), Decl. of Thomas A. Helper ("Helper Decl."), Exh. 5 (excerpts of 3/22/13 depo. trans. of Calvin Phillips) ("Pltf. Depo.") at 18-22.]  Plaintiff testified that his lung condition affects his stamina.  It prevents him from being "a good marathoner[.]"  [Id. at 18-19.]  In other words, Plaintiff was able to complete the "Hawaii Marathon" in 2011, but it took him eight and half hours.  [Id. at 19-20.]  Plaintiff testified that his eye condition has effects on his peripheral vision because, when he tracks with his eyes, he can only use one eye at a time and his eyes do not stay together.  Plaintiff, however, is still able to read and drive, and he testified that, while others might perceive his eye condition as a disability, he does not consider

3

it a disability.  [Id. at 20-21.]

        According to Defendant, Plaintiff cannot establish
that, when he applied for the FMA position, he was disabled, was
regarded as disabled, or requested a reasonable accommodation,
because his conditions did not substantially limit any of his
major life activities.  Defendant therefore urges this Court to
grant summary judgment to Defendant on Plaintiff's disability
discrimination claim.  [Mem. in Supp. of Motion at 5-6.]

        As to Plaintiff's other discrimination claims arising
from the selection process which ended with an offer of the FMA
position to Felicia Williams, Defendant concedes that Plaintiff
will be able to establish a prima facie case of race and gender
discrimination pursuant to Title VII of the Civil Rights Act of
1964, as amended ("Title VII"), 42 U.S.C. § 2000e-1, et seq., and
a prima facie case of age discrimination pursuant to the Age
Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et
seq.  [Id. at 6; Def.'s CSOF, Decl. of Glenn I. Murayama
("Murayama Decl.") at ¶ 3.]  After Williams declined the
position, the recruitment was cancelled for budgetary reasons.
[Def.'s CSOF, Decl. of Paul Pollock ("Pollock Decl.") at ¶ 6.[2]]
Defendant therefore argues that Plaintiff cannot establish a

_____

        [2] Pollock is Comptroller for the Pacific Naval Facilities
Engineering Command at the Pearl Harbor Naval Shipyard and
Intermediate Maintenance Facility ("NAVFAC Pacific").  [Pollock
Decl. at ¶ 1.]

prima facie case for his discrimination claims based on the decision not to hire anyone after Williams declined the position. [Mem. in Supp. of Motion at 6.]

Murayama became the selecting official for the position after one of his subordinates, Nessie Martin, asked to be recused from making the final selection.[3] [Murayama Decl. at ¶ 2.] Martin was the chairperson of the interview panel before she asked to be recused. [Def.'s CSOF, Decl. of Nessie P. Martin ("Martin Decl.") at ¶ 9.] While Martin was corresponding with Plaintiff regarding the interview process, Plaintiff asked for contact information so that he could file a formal complaint because the Navy was not following federal personnel guidelines. Martin believed this accusation was baseless. [Id. at ¶¶ 6-7, Exh. 1 (email string between Plaintiff and Martin dated 12/13/10 to 1/6/11).] Two days after his interview, Plaintiff sent Martin an email accusing her of mistreating him during the interview ("January 21 Email"). Martin believed this accusation was also baseless. [Martin Decl. at ¶ 14, Exh. 4 (January 21 Email).]

Murayama and Pollock, Murayama's supervisor, sought the recommendations of the three panelists who interviewed Plaintiff and Williams – Martin, Karen Hare, and Mark Chong. After all three recommended Williams, Murayama selected her, and Pollock

---

[3] During the period in question, Murayama was a Financial Manager for NAVFAC Pacific. [Murayama Decl. at ¶ 1.]

concurred.  [Murayama Decl. at ¶ 3.]

Defendant argues that Plaintiff will not be able to identify any evidence of discriminatory intent.  In an October 19, 2011 declaration, when asked to identify evidence which he believed establishes he was not selected because of his race, gender, age, and medical condition, the only specific evidence Plaintiff identified was that he wore a two-piece suit and a tie to the interview, and Martin said that he looked like a lawyer and that it was not "island style attire."  [Mem. in Supp. of Motion at 8-9 (quoting Helper Decl., Exh. 6 (Aff. of Pltf. dated 10/19/11)).]  Insofar as Plaintiff cannot produce either direct evidence or substantial and specific indirect evidence of discriminatory intent, Defendant urges this Court to grant summary judgment in Defendant's favor as to all of Plaintiff's discrimination claims.  [Id. at 9.]

As to Plaintiff's retaliation claim, Defendant argues that Plaintiff cannot establish a prima facie case because Plaintiff cannot establish a causal link between the alleged protected activity and Plaintiff's non-selection for the position.  First, Title VII's retaliation prohibition only protects a plaintiff's opposition to conduct addressed in Title VII, not opposition to general wrong-doing.  Plaintiff's emails to Martin did not allege any discrimination in violation of Title VII.  The January 21 Email stated that he would seek redress from

the Office of Personal Management and the Veterans'
Administration; he does not mention either the Equal Employment
Opportunity Commission ("EEOC") or an internal EEO officer.
Further, the January 21 Email alleged that Martin was rude,
unprofessional, condescending, and mean to him, but he did not
claim that Martin behaved that way because he belonged to any
class protected by Title VII.  Defendant also argues that the
January 21 Email does not constitute protected activity because
Plaintiff had no reasonable basis to assert that his non-
selection was discriminatory.  Defendant therefore argues that
Plaintiff's retaliation claim fails because Plaintiff did not
engage in protected activity.  [Id. at 9-11.]

        Even assuming, *arguendo*, that Plaintiff engaged in
protected activity, Plaintiff cannot prove a causal connection
between his protected activity and his non-selection.  Hare's and
Chong's recommendations to select Williams could not have been
motivated by Plaintiff's January 21 Email because they did not
know about it.  Further, although Martin knew about the email,
Plaintiff himself complained that the interview panelists had
already made up their minds not to select him prior to that date.
Plaintiff alleges that, prior to the interview, the Navy violated
federal hiring procedures and gave him inaccurate directions to
gain access to the base for his interview.  He also claims that,
during the interview, the panel gave him misleading information

7

about the position's salary and tried to discourage his interest in the position.  Specifically, Plaintiff claims that Martin attacked his character by being argumentative with him about his expertise in accounting procedures.  [Id. at 11-13 (citing Helper Decl., Exh. 6 at 4-6).]  Defendant emphasizes that the January 21 Email describes the interview process as "phony", indicating that Plaintiff believed that the selection decision had already been made prior to the email.  [Id. at 13 (citing Martin Decl., Exh. 4).]  Defendant therefore argues that, because Plaintiff cannot establish a causal link between the email and his non-selection, he cannot establish a prima facie case for his retaliation claim. [Id.]

Finally, Defendant argues that, even assuming *arguendo* that Plaintiff could prove a prima facie case, Defendant has articulated legitimate, non-retaliatory reasons for Williams's selection, and Plaintiff cannot establish that those reasons are merely pretext.  Chong and Hare, who did not know about the January 21 Email, made the same recommendation as Martin, who did know about the email, and Plaintiff has not identified any evidence of retaliatory intent on the part of Chong and Hare. Defendant therefore urges this Court to grant summary judgment to Defendant on Plaintiff's retaliation claim.  [Id. at 13-14.]

8

## II.  <u>Memorandum in Opposition</u>

Plaintiff states that he is a former Marine, who served on active duty from February 1979 to May 1982 and from early 1983 until he received an honorable medical discharge in August 1988. While serving in Okinawa, Plaintiff was diagnosed with Degenerative Lung Disease, Adult Onset Asthma, and Bronchitis and, after his discharge, the Department of Veterans Affairs assigned him a ten percent disability rating. [Pltf.'s Concise Statement of Facts in Supp. of Mem. in Opp. to Motion ("Pltf.'s CSOF"), filed 7/15/13 (dkt. no. 25), Decl. of Calvin C. Phillips ("Pltf. Decl.") at ¶¶ 3, 5-6.[4]] Plaintiff states that he also has "Strabismus and Amblyopia, or 'lazy eye', which causes [him] to have vision in only one eye.  It also gives the appearance that [he] do[es] not make eye contact with people when [he] talk[s] to them." [<u>Id.</u> at ¶ 6.]

Prior to applying for the position at issue in this case, Plaintiff's financial experience included owning a Jackson Hewitt Tax Service franchise that grew to thirty offices in three states, with 14,000 clients.  Plaintiff and his wife moved to Hawai`i because he was "burnt out" from his business.  [<u>Id.</u> at

_____

[4] The Plaintiff Declaration also includes the Errata to the Declaration of Calvin Phillips, filed July 18, 2011, [dkt. no. 26,] because the Plaintiff Declaration was inadvertently missing two pages.  Plaintiff also submitted a complete version of the Plaintiff Declaration with Plaintiff's original signature on July 23, 2013.  [Dkt. no. 28.]

¶¶ 10-11.]  In the fall of 2010, Plaintiff applied to the four FMA positions and scored one hundred points on the experience screening tool, with an additional ten points because of his disabled veteran status.  [Id. at ¶ 14.]  On December 13, 2010, Plaintiff received an email from Martin asking if he was interested in an interview.  The next day, Plaintiff responded that he was interested.  By January 5, 2011, Plaintiff had not heard back from Martin, and he sent her an email requesting a status update.  Martin responded that Plaintiff had never called her, but Plaintiff states that he was not provided with Martin's telephone number.  On January 14, 2011, Martin offered Plaintiff an interview on January 18, 2011 at either 10:00 a.m. or 2:30 p.m.  He responded that he wanted the 2:30 p.m. interview and requested information about directions, parking, and security clearance to enter the base.  Prior to the interview date, Plaintiff checked the directions and the security instructions and learned that he could not access the base.  Martin rescheduled the interview for January 19, 2011 at 9:45 a.m. and stated that there was no room for rescheduling.  Plaintiff, however, still had problems gaining entry to the base.  [Id. at ¶¶ 17, 19-23.]

Plaintiff states that, during the interview: he was told the job was "boring, repetitive, [and] low level[;]" he was asked why he wanted such a low-paying job; Martin misrepresented

10

the salary for the position; Martin said Plaintiff's suit and tie were not "island style" attire; and he felt like he "was being strongly discouraged from the position" and "was constantly defending" his interest in the position. [Id. at ¶¶ 24-26.] Martin challenged the expertise reflected in his application score, but Plaintiff was not allowed to show examples of his previous work, including PowerPoint presentations that he wanted to show at the interview. Martin also ignored him when he tried to correct her criticisms of his answers. In addition, Plaintiff points out that there two pages of interview questions that the panel did not ask. [Id. at ¶¶ 27, 29, 31, 33.] Plaintiff states that Martin did not take him seriously, and he felt "demeaned and humiliated" throughout the interview. [Id. at ¶ 35.]

Plaintiff emphasizes that the Certificate of Eligibles for the position lists sixteen applicants and states that the cut off score was ninety-two. All of the applicants had a score of ninety-two or higher, except for Williams, who had a score of eighty. Two males who ranked lower than Williams on the list were Tetsuji Willy and Harry Stevens, each of whom scored ninety-two and had a veterans preference. Neither of them, however, was interviewed for the position. [Pltf.'s CSOF, Decl. of Jerry P.S. Chang ("Chang Decl."), Exh. 2 (Navy HRS Northwest Certificate of Eligibles Control Sheet dated 11/30/10), Exh. 3 (resume of Tetsuji Willy), Exh. 4 (resume of Harry E.S. Stevens).]

According to Martin, Wendy Nagata told her that she could only interview the top two veteran candidates on the Certificate of Eligibles.  Martin stated that she did not look at Williams's score, she only looked at Williams's placement on the list. [Id., Exh. 5 (excerpts of 5/18/12 depo. trans. of Nessie P. Martin) at 53, 59-60.]

Hare testified at her deposition that, at the start of Plaintiff's interview, Martin stated that they "would see if he was as expert as he claimed to be on the questionnaire" and this made Hare uncomfortable.  Hare observed tension between Martin and Plaintiff during the interview and thought that Martin was "unusually strong."  [Id., Exh. 7 (excerpts of 5/17/12 depo. trans. of Karen Hare) at 39-41.]  Plaintiff agrees with Defendant's recitation of the panelists' scores and hiring recommendations, and does not dispute that the position was closed after Williams turned it down.  [Mem. in Opp. at 7.] Plaintiff, however, emphasizes that there was no hiring freeze in effect at that time.  [Chang Decl., Exh. 12 (excerpts of 5/9/12 depo. trans. of Glenn Murayama) at 69.]

Plaintiff points out that Martin is an Asian female, and each hiring selection that she made previously was either a female or Asian.  [Id., Exh. 1 (Aff. of Nessie P. Martin dated 10/19/11), Exh. 13 (list of selecting official and selectee, with demographic information, for various positions on the NAVFAC

Pacific Financial Management Support Line).]  Further, of the thirty-five employees in the NAVFAC Pacific Financial Management Support Line, twenty-nine are Asian and twenty-four are female. Only one employee is a non-Asian male.  [Id., Exh. 14 (list of NAVFAC Pacific Financial Management Support Line employees and their age, race, gender, and disability information).]

Of the four announced vacancies, the Navy initially decided not to fill any of them, but, on February 3, 2011, the Navy decided to fill one vacancy.  This was after Plaintiff stated his intent to file an EEO Complaint and after he contacted an EEO officer.  [Mem. in Opp. at 8 (citing Chang Decl., Exh. 15 (Navy's Responses to Interrogatories, dated 4/16/12)).]

As to the disability discrimination claim, Plaintiff argues that the Ninth Circuit has recognized that the Americans with Disabilities Amendments Act of 2008 ("ADAAA") rejected decisions by the United States Supreme Court that applied a narrow definition of "disability."  Plaintiff argues that the ADAAA requires a broad construction of "disability," and courts must apply coverage "to the 'maximum extent' permitted by the ADA and the ADAAA."  [Id. at 12 (discussing Rohr v. Salt River Project Agric. Improvement & Power Dist., 555 F.3d 850, 861-62 (9th Cir. 2009)).]

As to the age discrimination claim, Plaintiff urges this Court to follow Taggart v. Time Inc., 924 F.2d 43, 47 (2d

13

Cir. 1991), in which the Second Circuit held that denying an applicant employment because he is overqualified is a euphemism for age discrimination.  [Id. at 13-14.]

As to the race discrimination claim, Plaintiff urges this Court to follow Hernandez v. City of Ottawa, Kansas, 991 F. Supp. 1273 (D. Kansas 1998), where the Hispanic-American plaintiff had the highest written examination score among all applicants, the power plant superintendent only hired white males, and the superintendent commented that the plaintiff was overqualified.  The district court denied summary judgment to the defendants because, although the city manager made the ultimate hiring decision, the city manager relied on the panel's recommendation and some or all of the panel members could have skewed their interview scores because of discriminatory animus. [Id. at 14-15.]

Plaintiff argues that he belongs to multiple protected classes, race (Caucasian), gender (male), age (more than forty years old), disability (lung and eye impairment), and participant in protected EEO activity.  Plaintiff asserts that he was qualified for the FMA position, but Defendant selected Williams, who is outside of Plaintiff's protected classes and who was less qualified than Plaintiff.  Plaintiff argues that the actions of the panelists, Martin in particular, during his interview, show that Defendant's stated reasons for not hiring him (Williams

14

would be easier to train and Plaintiff was overqualified) are actually evidence of discriminatory intent against Plaintiff. [Id. at 15-16.]

Plaintiff therefore urges the Court to deny the Motion.

## III. **Reply**

First, Defendant counters Plaintiff's argument that he has a disability for purposes of the ADA because he has a ten percent disability rating from the Veterans Administration ("VA"). Defendant argues that the term "disability" is a term of art in the ADA, and therefore someone who is receiving government benefits may not necessarily be disabled for purposes of the ADA. Further, even blindness in one eye is not per se considered a disability; Plaintiff must still produce evidence of substantial limitations to major life activities, and Plaintiff has not done so. As to Plaintiff's argument that Rohr recognizes that the ADAAA broadened the definition of "disability", Defendant argues that the ADAAA did not alter the requirement of evidence that the condition substantially limits a major life activity. [Reply at 2-3.]

Defendant reiterates that Plaintiff has not rebutted Defendant's non-discriminatory reasons for selecting Williams. Plaintiff discounts his pre-interview disputes with Martin by blaming them on Martin, and Plaintiff did not even attempt to explain his accusation that the Navy was not following federal

15

hiring regulations.  Even if Martin was to blame for the
disputes, the Ninth Circuit only requires that the employer
honestly believed its reason for the employment decision; the
fact that the reason was foolish, trivial, or baseless does not
create a cause of action.  Defendant argues that Plaintiff has
not shown that discriminatory animus was the source of any of the
disputes before the interview.  Nothing in the email exchange
between Plaintiff and Martin suggests that she treated him less
favorably based on his race, age, gender, or alleged disability.
[Id. at 4-5.]

       As to Murayama's statements that Plaintiff was
overqualified and Williams would be easier to train, Defendant
emphasizes that the Ninth Circuit has rejected Taggart.  Thus,
under appropriate circumstances, an employer in the Ninth Circuit
can reject an applicant who is more than forty years old because
he is overqualified.  [Id. at 5-7 (some citations omitted)
(discussing EEOC v. Ins. Co. of N. Am., 49 F.3d 1418, 1421 (9th
Cir. 1995)).]  Plaintiff argues that Murayama's impression that
Plaintiff was overqualified is supported by Plaintiff's resume,
Plaintiff's experience questionnaire, and specific concerns from
the panel members.  [Id. at 7 (citing Chang Decl., Exh. 16
(Pltf.'s resume); Def.'s CSOF, Decl. of Mark L. Chong ("Chong
Decl.") at ¶ 8).]  Plaintiff also complains that the panelists
told him the position's duties were boring, repetitive, and low

16

level, but Defendant argues that this was an accurate description compared to Plaintiff's varied experiences.  Plaintiff also complains that Martin gave him erroneous information about the salary, but Plaintiff has not established exactly what the error was, whether it was a significant error, or whether it was intentional.  Defendant therefore argues that Plaintiff has not identified any evidence that the panel members did not genuinely believe that Plaintiff's skills were incompatible with the position.  [Id. at 8 & n.3.]

Defendant notes that Plaintiff has essentially acknowledged that his interview was contentious.  Defendant also argues that nothing in Plaintiff's description of the interview indicates that the panelists discriminated against him for any reason.  Thus, nothing in the interview suggests that the panel's concerns about Plaintiff's interview were merely pretext for discrimination.  [Id. at 9 (citing Pltf. Decl. at ¶¶ 24-31).]

Defendant also emphasizes that there is significant evidence of Williams's qualifications, and Plaintiff does not dispute that Williams was qualified for the position.  Defendant therefore argues that Plaintiff cannot show that the selection of Williams resulted from discriminatory intent.  [Id. at 9-11.]

Defendant also argues that Plaintiff's statistical evidence does not constitute evidence of discriminatory intent because the sample groups of employees that Plaintiff points to

17

are too small and fail to take into account the fact that the applicant pool itself was overwhelmingly Asian and female.  [Id. at 11-13 (some citations omitted) (citing Reply, Second Decl. of Thomas A. Helper, Exh. 7 (three Certificates of Eligibles for five of the hiring decisions listed on Chang Decl., Exh. 13)).]

     As to the alleged irregularities in the Certificate of Eligibles, Defendant emphasizes that: Martin was not involved in the generation of the Certificate; the human resources office ("HR") directed Martin to interview only Plaintiff and Williams, the top two people on the list; and those directions were consistent with the instructions on the Certificate itself.  [Id. at 14 (citing Martin Decl. at ¶ 5; Chang Decl., Exh. 2 at 2).] Even assuming, *arguendo*, that HR should have required the panel to interview more than two applicants, Plaintiff has not shown that there was discriminatory intent behind the decision to interview only two applicants.  Further, Plaintiff has not shown that he was harmed by being part of a smaller interview pool. Defendant argues that Plaintiff has merely identified subjective evaluation factors in the panel's recommendations as evidence of the alleged discrimination, but subjective evaluations are not necessarily illegal, and Plaintiff must do more than establish a prima facie case and attack the credibility of Defendant's witnesses.  [Id. at 15.]

As to the retaliation claim, Defendant argues that
Plaintiff cannot establish a prima facie case because he cannot
show a causal link between the alleged protected activity and his
non-selection.  Plaintiff admits that he had no reasonable basis
to make a discrimination claim on January 21, 2011, and Defendant
argues that any retaliation claim based on the January 21 Email
must fail.  [Id. at 17 (citing Pltf.'s CSOF, Response to Def.'s
CSOF ¶ 14).]  Plaintiff now seems to suggest that his protected
activity was contacting an EEO officer on January 25, 2011.
Defendant emphasizes that Plaintiff did not raise this claim in
the Complaint, but Defendant acknowledges that, if this Court
does consider it, that action was protected conduct under Title
VII's participation clause.  [Id. at 17-18 (some citations
omitted) (citing Pltf. Decl. at ¶ 38; Mem. in Opp. at 8).]
Plaintiff also points to the fact that, on February 3, 2011, he
stated an intent to file an EEO complaint, but there is no
evidence that Plaintiff informed the Navy of his intent to file
an EEO complaint before he actually filed it.  [Id. at 17 n.7.]

Defendant emphasizes that Plaintiff has apparently
conceded that the cancellation of the recruitment process for the
position was not an adverse personnel action because the Navy
ultimately did not hire anyone for the position, and it did not
continue to accept applications.  Plaintiff therefore argues that
the decision to reduce the number of openings from four to one is

19

the adverse personnel action at issue.  That decision was not finalized until February 3, 2011, and therefore could have been prompted by Plaintiff's protected activity on January 25, 2011. Defendant, however, argues that Plaintiff has not shown that the ultimate decision-maker was aware of his contact with the EEO officer.  Further, the potential budget problems that were the reason for the reduction in new hires arose before Plaintiff's protected conduct, as evidenced by the fact that the panel was only authorized to interview two applicants and Martin told Plaintiff during the interview that the Navy might not hire anyone.  [Id. at 18-19 (citing Pltf.'s Decl. at ¶ 34).]

In addition, Defendant argues that the United States Supreme Court's recent decision in University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517 (2013), rejected the "motivating factor" test that was the law in the Ninth Circuit.  The Supreme Court held that, to prevail on a retaliation claim, an employee must establish "but for" causation.  Thus, Plaintiff must produce substantial, specific evidence that, but for retaliatory intent, the Navy would have hired him for the position.  Defendant argues that Plaintiff cannot make this showing.  The same legitimate reasons for Williams's selection apply to the retaliation claim, and Plaintiff cannot overcome Defendant's showing.  Defendant therefore urges this Court to grant summary judgment on

Plaintiff's relation claim to Defendant.  [Id. at 20-21.]

## DISCUSSION

### I.  Disability Discrimination

         Plaintiff brings his disability discrimination claim
pursuant to the Rehabilitation Act.  See Complaint at ¶ 5 (citing
42 U.S.C. § 2000e-16); 29 U.S.C. § 794a(a)(1) (incorporating 42
U.S.C. § 2000e-16 into the Rehabilitation Act); see also, e.g.,
Katz v. Geithner, Civil No. 09-00599 ACK-RLP, 2013 WL 815999, at
*1 & n.1 (D. Hawai`i Mar. 4, 2013) ("Mr. Katz properly named as
Defendant Timothy Geithner, then-Secretary of the Treasury, in
his official capacity, as required under 42 U.S.C. § 2000e-16(c)
(incorporated into the Rehabilitation Act by 29 U.S.C.
§ 794a(a)(1)).").

         To prove disability discrimination under the
         Rehabilitation Act, a plaintiff must show that:
         (1) at the time of the alleged discrimination, the
         plaintiff had a disability within the meaning of
         the Rehabilitation Act; (2) except for her
         disability, she was otherwise qualified for the
         position; and (3) she suffered an adverse
         employment action because of her disability.
         Walton v. U.S. Marshals Serv., 492 F.3d 998, 1005
         (9th Cir. 2007).  The Rehabilitation Act
         incorporates the standards of substantive
         liability of the Americans with Disabilities Act,
         42 U.S.C. § 12101 et seq.  Walton, 492 F.3d at
         1005.  Under the ADA, disability means "(A) a
         physical or mental impairment that substantially
         limits one or more of the major life activities of
         such individual, (B) a record of such an
         impairment, or (C) being regarded as having such
         an impairment."  Id.  The standard for causation
         is the "motivating factor" test, under which a
         plaintiff must show that any adverse employment
         action was motivated, even in part, by animus

21

> based on plaintiff's disability or request for
> accommodation.  Head v. Glacier Northwest, Inc.,
> 413 F.3d 1053, 1065 (9th Cir. 2005).  If Plaintiff
> sets out a prima facie case, the burden shifts to
> Defendant to demonstrate a legitimate,
> non-discriminatory reason for the action.  Lucero
> v. Hart, 915 F.2d 1367, 1371 (9th Cir. 1990).

Thompson v. Donahoe, No. C 11–01670 EDL, 2013 WL 3286196, at *9

(N.D. Cal. June 27, 2013).

"[M]ajor life activities include, but are not limited

to, caring for oneself, performing manual tasks, seeing, hearing,

eating, sleeping, walking, standing, lifting, bending, speaking,

breathing, learning, reading, concentrating, thinking,

communicating, and working."  42 U.S.C. § 12102(2)(A).  As to the

third method of proving disability:

> For purposes of paragraph (1)(C):
>
> > (A) An individual meets the requirement of
> > "being regarded as having such an impairment"
> > if the individual establishes that he or she
> > has been subjected to an action prohibited
> > under this chapter because of an actual or
> > perceived physical or mental impairment
> > **whether or not the impairment limits or is
> > perceived to limit a major life activity**.
> >
> > (B) Paragraph (1)(C) shall not apply to
> > impairments that are transitory and minor. A
> > transitory impairment is an impairment with
> > an actual or expected duration of 6 months or
> > less.

§ 12102(3) (emphasis added).

Defendant does not appear to dispute that Plaintiff was

qualified for the FMA position, and that Plaintiff's non-

selection for the position was an adverse employment action.  The

22

dispute here centers around the issue of whether, at the time he

applied for the FMA position, Plaintiff had a disability for

purposes of the Rehabilitation Act and the ADA, and whether

Plaintiff was not selected because of that disability.

Plaintiff argues that he is disabled under the ADA

definition because he was regarded as disabled due to his

disabled veteran status, as evidenced by his receipt of

additional points in his eligibility score for a veterans

preference.[5]  It is undisputed that, at the time he applied for

the FMA position, Plaintiff had physical impairments that were

neither transitory nor minor, and that he was a disabled veteran

and received additional veterans preference points.  This Court

notes that, in the ADAAA, Congress has adopted a broad view of

the regarded-as provision.  See, e.g., Walker v. Venetian Casino

Resort, LLC, No. 02:10-CV-00195-LRH-VCF, 2012 WL 4794149, *14-15

& n.11 (D. Nev. Oct. 9, 2012) (discussing the ADAAA).  Thus, the

gravamen of Plaintiff's disability discrimination claim is

whether Plaintiff was not selected for the FMA position because

_____

[5] This Court does not construe Plaintiff's Complaint as
alleging that he is disabled for purposes of the Rehabilitation
Act.  Further, even if this Court were to construe Plaintiff's
Complaint as raising that allegation, this Court would find that
Plaintiff has failed to present any evidence that his physical
impairments substantially limit one or more of his major life
activities.  See, e.g., Pltf. Depo. at 18-21.  Further,
Plaintiff's disability rating from the VA does not prove that he
is disabled for purposes of the ADA because those are two
completely separate inquiries.  See, e.g., Thorn v. BAE Sys. Haw.
Shipyards, Inc., 586 F. Supp. 2d 1213, 1221-22 (D. Hawai`i 2008).

23

of his disability.

Murayama made the decision to select Williams, with the consensus of his supervisor, Pollock.  [Murayama Decl. at ¶ 3.] Each has presented testimony that he was not aware of either Plaintiff's or Williams's disability status.  [Murayama Decl. at ¶¶ 3-4; Pollock Decl. at ¶ 5.]  Martin acknowledges that Plaintiff brought up a medical condition during the interview, but she states that she knew it would be improper for the panel to consider it in making the selection, and she told him that he did not need to talk about the condition.  She states that she "paid no attention" to the condition.  [Martin Decl. at ¶ 12.] Chong did not remember Plaintiff disclosing information about a disabling medical condition.  [Chang Decl., Exh. 8 (Aff. of Mark Chong dated 10/19/11) at 2 ("I do not have any knowledge of Complainant's medical condition" (emphasis omitted)).]  Hare remembered that Plaintiff mentioned a medical condition during the interview, but she did not remember what it was, and she thought his comment referred to Plaintiff's veterans preference points.  [Id., Exh. 9 (Aff. of Karen Hare dated 10/19/11) at 2.] All three panel members denied basing the selection on Plaintiff's medical condition.  [Id., Exh. 1 (Aff. of Nessie P. Martin dated 10/19/11) at 4, Exh. 8 at 4, Exh. 9 at 4.]

Plaintiff identifies no evidence which indicates that he was not selected because of his disability.  Defendant

presents evidence addressing the reasons why the panel members recommended, and Murayama ultimately selected, Williams over Plaintiff.  None are related to Plaintiff's disability.

Murayama selected Williams based on the interview panelists' unanimous recommendation of her over Plaintiff because "[t]he consensus was that although Mr. Phillips had better technical skills and more experience, he was perhaps overqualified for the position, and that based on the interviews, Ms. Williams would be easier to train on Navy procedures and to work with."  [Murayama Decl. at ¶ 3.]

In addition to the reasons that Murayama summarized, Martin recommended Williams because Williams had a master's degree, expressed a willingness to learn NAVFAC Pacific's procedures, and had experience in jobs that required significant attention to detail, which was a quality required for the FMA position.  In contrast, Martin believed: Plaintiff needed "hand-holding," as evidenced by the numerous emails he sent her prior to the interview; he made baseless allegations of wrong-doing in the selection process; and he exaggerated his expertise.  [Martin Decl. at ¶¶ 6-8, 11, 14-15.]

As part of the application process, Plaintiff completed an on-line questionnaire that required him to rate his competency in twenty-six specific financial management and accounting skills required for the FMA position.  Plaintiff gave himself the

highest rating in twenty-five of the skills;[6] Martin was skeptical of his ratings.  During Plaintiff's interview, the panel used a set of written questions, and Martin assigned a score for each answer.  In her opinion, Plaintiff was unable to answer basic questions that a GS-5 or a GS-7 would be able to answer, leading her to conclude that Plaintiff had exaggerated about his expertise when he completed the questionnaire.  Martin gave Williams a higher total score than Plaintiff.  [Id. at ¶¶ 8-9, 11.]

Hare scored Plaintiff higher than Williams because Plaintiff had more financial experience.  [Def.'s CSOF, Decl. of Karen Hare ("Hare Decl.") at ¶ 4.]  When Murayama asked for Hare's recommendation, Hare recommended Williams because:

> I thought both applicants would need to be trained and both of them could learn the job.  However because Mr. Phillips had owned his own business, hired and fired employees, and implied he had been financially successful, I felt that Mr. Phillips was better suited to a management position. Ms. Williams struck me as someone who would more easily adapt to the FMA position.[7]  She seemed motivated to take direction and learn the requirements of the job.

---

[6] The highest rating signifies: "I am considered an expert in performing this task.  I have supervised performance of this task or am normally the person who is consulted by other workers to assist them in doing this task because of my expertise." [Martin Decl., Exh. 2 (Pltf.'s Questionnaire Responses).]

[7] The FMA position "was one level above the entry level GS-7 Accounting Technician" and "did not have an automatic right to promotion to high pay graded positions . . . ." [Martin Decl. at ¶ 2.]

[Id. at ¶ 7.]  Although Hare knew about Martin's recusal, she did not know the reasons behind it.  [Id. at ¶ 6.]

Chong also marked Plaintiff higher than Williams, based only on technical expertise.  He did not factor demeanor during the interview or other subjective evaluations into the score. [Chong Decl. at ¶ 4.]  When Murayama asked for Chong's recommendation, Chong recommended Williams because Chong believed that Williams would be more receptive to working on a team, would be easier to supervise, and would get along better with other employees.  Williams admitted that she was unfamiliar with some Navy funding processes, but expressed willingness to learn. Plaintiff, in contrast: "was somewhat confrontational and challenging[;]" could not identify Navy funding documents, in spite of his claimed expertise; seemed like he might not be willing to learn because he already considered himself an expert; and admitted that "'sometimes he might rub people the wrong way.'"  [Id. at ¶ 7.]  Like Hare, Chong did not know the reason why Martin recused herself from the selection.  [Id. at ¶ 6.]

Reviewing the current record in the light most favorable to Plaintiff, see Cameron v. Craig, 713 F.3d 1012, 1018 (9th Cir. 2013), Plaintiff has not identified sufficient evidence to raise a genuine issue of material fact as to whether he was not selected for the FMA position because he was regarded as disabled.  This Court therefore CONCLUDES that Defendant is

entitled to judgment as a matter of law because Plaintiff cannot

establish a prima facie case of disability discrimination.   See

Fed. R. Civ. P. 56(a) (stating that a party is entitled to

summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to

judgment as a matter of law").   Defendant's Motion is GRANTED as

to Plaintiff's disability discrimination claim.

## II.   **Title VII**

The Ninth Circuit has stated:

> In 1972, Congress amended Title VII of the
> Civil Rights Act of 1964 to extend its coverage to
> federal employees.  As amended, § 717 of the Civil
> Rights Act, codified at 42 U.S.C. § 2000e-16,
> "provides that all personnel actions affecting
> federal employees and applicants for federal
> employment shall be made free from any
> discrimination based on race, color, religion,
> sex, or national origin," and "establishes an
> administrative and judicial enforcement system."
> Brown v. Gen. Servs. Admin., 425 U.S. 820, 829-30,
> 96 S. Ct. 1961, 48 L. Ed. 2d 402 (1976) (internal
> quotation marks omitted). . . .

Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch,

572 F.3d 1039, 1043 (9th Cir. 2009).

Courts analyze Title VII discrimination claims and

retaliation claims under the burden-shifting analysis set forth

in McDonnell Douglas v. Green, 411 U.S. 792 (1973).   See, e.g.,

Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir.

2010) (discrimination); Dawson v. Entek Int'l, 630 F.3d 928, 936

(9th Cir. 2011) (retaliation).

A.   **Retaliation**

Title VII prohibits an employer from discriminating against an employee for opposing an unlawful employment practice, such as filing a complaint alleging sexual orientation harassment and hostile work environment.  Retaliatory discharge claims follow the same burden-shifting framework described in McDonnell Douglas.  To establish a prima facie case, the employee must show that he engaged in a protected activity, he was subsequently subjected to an adverse employment action, and that a causal link exists between the two.  See Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir. 1988). . . .

Dawson, 630 F.3d at 936.  In University of Texas Southwestern Medical Center v. Nassar, the United States Supreme Court held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in [42 U.S.C.] § 2000e-2(m).[8]  This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  133 S. Ct. 2517, 2533 (2013).

42 U.S.C. § 2000e-3(a) states, in pertinent part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner

---

[8] Section 2000e-2(m) states: "Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."

> in an investigation, proceeding, or hearing under
> this subchapter.

The two parts are known as the "opposition clause" and the

"participation clause." See, e.g., Learned v. City of Bellevue,

860 F.2d 928, 932 (9th Cir. 1988).

> [T]he opposition clause, by its terms, protects
> only those employees who oppose what they
> reasonably perceive as discrimination under the
> Act.  An employee need not establish that the
> opposed conduct in fact violated the Act in order
> to establish a valid claim of retaliation. [Sias
> v. City Demonstration Agency, 588 F.2d 692, 695
> (9th Cir. 1978).]  That is, an employee may fail
> to prove an "unlawful employment practice" and
> nevertheless prevail on his claim of unlawful
> retaliation.  However, the opposed conduct must
> fairly fall within the protection of Title VII to
> sustain a claim of unlawful retaliation.  Silver
> v. KCA, Inc., 586 F.2d 138, 142 (9th Cir. 1978)
> ("under the clear language of the "opposition"
> clause of [section] 704(a), a case of retaliation
> has not been made out unless the "retaliation"
> relates to the employee's opposition to a
> [section] 703 violation"); see also Sias, 588 F.2d
> at 695-96 ("[a]lthough the [district] court made
> no explicit finding that Sias' opposition was
> based on a reasonable belief that the City's
> employment practices violated Title VII, such a
> finding is implicit here") (footnote omitted).
>
>          . . . .
>
>      The participation clause is broadly construed
> to protect employees who utilize the tools
> provided by Congress to protect their rights.
> Sias, 588 F.2d at 695.  As with the opposition
> clause, it is not necessary to prove that the
> underlying discrimination in fact violated Title
> VII in order to prevail in an action charging
> unlawful retaliation.  Id.  "If the availability
> of that protection were to turn on whether the
> employee's charge were ultimately found to be
> meritorious, resort to the remedies provided by
> the Act would be severely chilled." Id (citation

omitted).

> The mere fact that an employee is participating in an investigation or proceeding involving charges of some sort of discrimination, however, does not automatically trigger the protection afforded under section 704(a); the underlying discrimination must be reasonably perceived as discrimination prohibited by Title VII. See generally, G. Rutherglen, Major Issues in the Federal Law of Employment Discrimination 47-48 (Federal Judicial Center 1987). Thus, even if the filing of Title VII charges with a state agency such as the [Human Rights Commission ("HRC")] could be construed as participation in an investigation, proceeding, or hearing under Title VII, see Hicks v. Abt Assocs., 572 F.2d 960, 968-69 (3d Cir. 1978), the HRC filing does not fall within the protection of 704(a) in this case because Learned did not allege discrimination prohibited by Title VII. . . .

Id. (some alterations in Learned).  The participation clause only prohibits retaliation against persons who participate in the EEOC process. See, e.g., Greisen v. City of North Las Vegas, 251 Fed. Appx. 462, 463 (9th Cir. 2007) (citing Vasconcelos v. Meese, 907 F.2d 111, 113 (9th Cir. 1990)).

## 1.   **January 21 Email**

The Complaint characterizes Plaintiff's January 21 Email as an "informal complaint of discrimination" and alleges that Plaintiff was not selected for the FMA position based on, inter alia, "his filing of a discrimination complaint . . . ." [Complaint at ¶¶ 15,[9] 17.]  The January 21 Email does not

---

[9] This citation refers to the first of two paragraphs in the Complaint numbered "15."

constitute protected activity under the participation clause because it is not part of the EEOC process; the January 21 Email is directed to the U.S. Naval Personnel System, the Office of Personnel Management, and the VA. [Martin Decl., Exh. 4 (January 21 Email).]

Plaintiff's position is that the January 21 Email is protected under the opposition clause because he opposed what he reasonably perceived as discrimination. The January 21 Email, however, does not oppose conduct reasonably perceived as discrimination prohibited under Title VII. Although the January 21 Email describes the treatment Plaintiff received in connection with his interview as "DISCRIMINATORY," it does not allege that Plaintiff was treated that way based on his race, color, religion, gender, or national origin. [Id. (emphasis in original).] Rather, Plaintiff speaks in general terms. His complaint essentially reflects his belief that he was not accorded due respect – he states that "[t]he last time [he] was treated so rudely, unprofessionally, condescendingly, and just plain meanly, was as a junior US Marine[,]" and Martin failed to extend him either "the minimum courtesies in which to treat people" or "simple human courtesy[.]" [Id.]

Even assuming, *arguendo*, that the January 21 Email could be construed as describing discrimination prohibited under Title VII, in order for the opposition to be protected conduct

for purposes of a retaliation claim, Plaintiff's perception of the conduct as discrimination in violation of Title VII must be reasonable.  Plaintiff concedes that he did not have a reasonable basis for a Title VII discrimination claim at that time. Defendant states in his CSOF that, "[a]t the time Phillips sent the January 21, 2011 email, he had no reasonable basis for alleging that he had been discriminated against the [sic] basis of his race, sex, age, or alleged disability."  [Def.'s CSOF at ¶ 14.]  Plaintiff states that this statement is "[n]ot disputed." [Pltf.'s CSOF at ¶ 14.]

This Court therefore finds that Plaintiff's January 21 Email does not constitute protected conduct which would support a Title VII retaliation claim, and concludes that Plaintiff's Title VII retaliation claim alleging that he was not selected for the FMA position in retaliation for making an informal complaint in the January 21 Email fails as a matter of law.

## 2. **January 25 EEO Contact**

Plaintiff also argues that the protected activity supporting his retaliation claim was his January 25, 2011 contact with an EEO officer, and that the adverse employment action was the February 3, 2011 decision to fill only one of the four announced FMA vacancies.  [Mem. in Opp. at 6 (citing Pltf. Decl. at ¶ 38); id. at 8 (citing Chang Decl. at ¶ 16, Exh. 15).]

33

However, the purported retaliation claim based on these factual allegations is not properly before this Court because Plaintiff did not plead them in the Complaint.  The Complaint states that Plaintiff filed his administrative complaint "on the basis that he was discriminated on [sic] the basis of . . . retaliation for his opposition to discriminatory treatment in that he was more qualified than the person to whom the Defendant had offered the vacant position[.]"  [Complaint at ¶ 14.]  There is no allegation in the Complaint that Defendant reduced the number of available FMA positions from four to one.

Even assuming that the claim is properly before this Court, Plaintiff does not establish a prima facie case.  The record is absent of any evidence that his January 25, 2011 contact with an EEO officer was the but-for cause of the reduction from four hires to one.  Plaintiff provides evidence that "[a]gency management" made the decision to reduce the number of hires, [Chang Decl., Exh. 15 (Agency Responses to Interrogatories) at 3,] but does not identify evidence that agency management was aware that he had contacted an EEO officer. The January 21 Email is not evidence that Plaintiff would, or was likely to, initiate the EEO process because, as discussed *supra*, the email indicates that Plaintiff was directing his complaint to other offices.  Defendant presented Pollock's testimony that, in late October or early November 2010, he asked HR if he "could

34

cancel all outstanding recruitments, including the four FMA positions[,]" but HR informed him that, because it had already accepted applications and generated the Certificate of Eligibles, the recruitment process for one of the FMA positions had to go forward, but Pollock could cancel the other three FMA recruitments, as well as all other outstanding recruitments. Pollock did so.  [Pollock Decl. at ¶ 3.]  After Williams declined the FMA position, HR advised Pollock that he could cancel that recruitment as well.  Pollock states that he did so for "budgetary reasons . . . , not based on anything to do with Mr. Phillips or any other applicant."  [Id. at ¶ 6.]  Plaintiff presents no evidence that would raise a genuine issue of material fact regarding these reasons for reducing the FMA recruitments from four to one.

This Court therefore concludes that Defendant is entitled to judgment as a matter of law as to Plaintiff's retaliation claim.  Defendant's Motion is GRANTED as to Plaintiff's retaliation claim.

**B.   Race and Gender Discrimination under Title VII and Age Discrimination under the ADEA**

Plaintiff alleges Title VII race and gender discrimination claims based upon his non-selection for the FMA position.  Plaintiff has the initial burden of establishing a prima facie case of race and gender discrimination by showing:

> (i) that he belongs to a . . . minority;
> (ii) that he applied and was qualified for a
> job for which the employer was seeking
> applicants; (iii) that, despite his
> qualifications, he was rejected; and
> (iv) that the position was filled by a
> non-minority.

> McDonnell, 411 U.S. at 802; [Villiarimo v.] Aloha
> Island Air[, Inc.], 281 F.3d [1054,] 1062 [(9th
> cir. 2002)].  The degree of proof required to
> establish a prima facie case on summary judgment
> is minimal.  Aloha Island Air, 281 F.3d at
> 1062. . . .

See Galloway v. Mabus, No. 11-cv-0547 BEN (NLS), 2013 WL 435932,

at *3 (S.D. Cal. Feb. 4, 2013).  In carrying his burden,

Plaintiff "may rely on circumstantial evidence, rather than

direct evidence of pretext.  But if he does, 'such evidence must

be both specific and substantial.'"  See id. at *5 (quoting Aloha

Island Air, 281 F.3d at 1062).

In addition, Plaintiff brings an age discrimination

claim pursuant to the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 621 et seq.  Under the ADEA, it is unlawful

for an employer to "refuse to hire" an applicant who is more than

forty years old "because of such individual's age[.]"  29 U.S.C.

§§ 623(a)(1), 631(a).

> Under a "disparate treatment" theory of
> discrimination,[10] a plaintiff in an ADEA case

---

[10] "Disparate treatment is demonstrated when the employer
simply treats some people less favorably than others because of
[a protected characteristic]."  Sheppard v. David Evans &
Assocs., 694 F.3d 1045, 1049 at n.1 (9th Cir. 2012) (citations
                                             (continued...)

can establish age discrimination based on:
(1) "circumstantial evidence" of age
discrimination; or (2) "direct evidence" of age
discrimination.  See Diaz v. Eagle Produce Ltd.
P'ship, 521 F.3d 1201, 1207 (9th Cir.2008)
(discussing circumstantial evidence of age
discrimination); Enlow v. Salem-Keizer Yellow Cab
Co., Inc., 389 F.3d 802, 811 (9th Cir. 2004)
(discussing direct evidence of age
discrimination). . . .

Claims of age discrimination based on
circumstantial evidence are analyzed under the
"three-stage burden shifting framework laid out in
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93
S. Ct. 1817, 36 L. Ed. 2d 668 (1973)."  Diaz, 521
F.3d at 1207. . . .

Sheppard v. David Evans & Assocs., 694 F.3d 1045, 1049 (9th Cir.

2012) (footnote omitted).  "Despite the burden shifting, the

ultimate burden of proof remains always on the former employees

to show that [the employer] intentionally discriminated because

of their age."  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281

(9th Cir. 2000) (citation omitted).

To establish a prima facie case of ADEA discrimination

under the disparate treatment theory, a plaintiff "must show that

(1) she was within the protected class of individuals, i.e. at

least 40 years of age; (2) she applied for a position for which

she was qualified; (3) she was not hired; and (4) a substantially

younger person with similar (or lesser) qualifications received

the position."  Sanchez v. Office of Legislative

---

[10](...continued)
and quotation marks omitted).

Counsel-Legislative Data Ctr., No. 2:12-cv-3086 JAM GGH PS, 2013 WL 1563482, at *2 (E.D. Cal. Apr. 12, 2013) (citing Cotton v. City of Alameda, 812 F.2d 1245, 1248 (9th Cir. 1987); Pusa v. Holder, 341 Fed. Appx. 318, 319 (9th Cir. 2009)).

Defendant concedes that Plaintiff will be able to establish a prima facie case of race, gender, and age discrimination as to the selection process that ended with an offer of the position to Williams.[11]  [Mem. Supp. of Motion at 6.]  Defendant, however, argues that the Navy had legitimate, non-discriminatory reasons for selecting Williams.

## 1.  Legitimate, Non-discriminatory Reasons for Plaintiff's Non-selection

Murayama, with Pollock's consensus, made the decision to select Williams.  [Murayama Decl. at ¶¶ 1, 3.]  Murayama and Pollock each states that he was not aware of Williams's age or race or Plaintiff's age or race.  [Id. at ¶ 4; Pollock Decl. at ¶ 5.]  Murayama and Pollock asked each of the panel members for his or her recommendation about who should be hired, and Murayama

---

[11] It does not appear that Plaintiff asserts a discrimination claim on the fact that he was not offered the FMA position after Williams declined the offer.  Even if Plaintiff is asserting such a claim, he would be required to show that, after Plaintiff's rejection "the position remained available and the employer continued to review applicants possessing comparable qualifications."  See Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002) (citing McDonnell Douglas, 411 U.S. at 802).  There is no evidence that the Navy kept the FMA position open and continued to review applicants after Williams declined the position.

selected Williams based on the panel members' unanimous recommendations.  [Murayama Decl. at ¶ 3.]  The panel members' reasons for recommending Williams over Plaintiff are summarized *supra* Discussion Section I.  None refer to race, gender, or age.

This Court therefore finds that Defendant has articulated legitimate reasons for Plaintiff's non-selection that were unrelated to Plaintiff's race, gender, or age.

### 2.  **Pretext**

Plaintiff argues that the stated reasons for his non-selection were mere pretext for discriminatory animus based on his race, gender, and age.  First, Plaintiff urges this Court to follow Taggart v. Time Inc., in which the Second Circuit recognized that denying employment to an older applicant on the ground that he is overqualified "is simply to employ a euphemism to mask the real reason for refusal, namely, in the eyes of the employer the applicant is too old."  924 F.2d 43, 47 (2d Cir. 1991) (citations omitted).  Plaintiff also relies upon a similar analysis in Hernandez v. City of Ottawa, Kansas, 991 F. Supp. 1273 (D. Kansas 1998).  [Mem. in Opp. at 13-15 (discussing Taggart and Hernandez).]  The Ninth Circuit, however, has stated:

> While we do not agree with the suggestion in Taggart that rejection of an older worker because he or she is "overqualified" is always tantamount to age discrimination, cases explaining Taggart make the valid point that reliance on "overqualification" as a disqualifying factor in hiring can easily mask age discrimination when "overqualified" is not defined.  In Stein [v.

National City Bank], the court noted that "[t]he
defendant's criterion in Taggart amounted to a
label-'overqualified'-without any objective
content.  This criterion would allow the employer
to shift the standard at its pleasure, raising the
standard for some applicants and lowering it for
others." Stein, 942 F.2d [1062,] 1066 [(6th Cir.
1991)].  See also Bay [v. Times Mirror Magazines,
Inc.], 936 F.2d [112,] 118 [(2d Cir. 1991)]
(conclusory statement that person is overqualified
may serve as a mask for age discrimination.)

In this case, [Insurance Company of North
America's ("ICNA")] rejection of [applicant
Richard] Pugh due to his overqualification for the
position at issue was based on at least one
defined concern. [Walter] Merkel[, one of two
managers who received Pugh's resume,] explained
that he feared that someone with Pugh's extensive
background in the loss control field would delve
too deeply into the accounts to which he would be
assigned.  He explained that if Pugh became too
involved in uncomplicated risks, he would impose
upon insureds' time to an inappropriate degree.
Merkel's reason for rejecting Pugh was objective
and non-age-related.  This uncontradicted evidence
supports the conclusion that Merkel's decision
that Pugh was "overqualified" for the position was
not a mask for age discrimination.  The EEOC did
not produce evidence that this neutral reason was
pretextual.  Accordingly, we agree with the
district court's determination that Pugh did not
present enough evidence that ICNA discriminated
against him on the basis of age to survive summary
judgment.

E.E.O.C. v. Ins. Co. of N. Am., 49 F.3d 1418, 1421 (9th Cir.

1995) (some alterations in Ins. Co.); see also Coleman, 232 F.3d

at 1290.

Similarly, in the instant case, each panel member's

reasons for recommending Williams over Plaintiff were objective

and unrelated to the applicants' ages.  Plaintiff identifies no

40

evidence which raises a genuine issue of fact as to whether
Murayama's and the panel's conclusion that Plaintiff was
overqualified for the FMA position was a mask for age
discrimination.  Even accepting Plaintiff's testimony that he
panel members discouraged his interest in the FMA position,
[Pltf. Decl. at ¶ 24,] their concern that Plaintiff may not be
satisfied with the position if he were hired is consistent with
their beliefs that Plaintiff was overqualified for the position.
There is no evidence that these beliefs were based upon
Plaintiff's age.  As to Plaintiff's claim that, during the
interview, Martin misrepresented the salary for the FMA position,
[id.,] Plaintiff does not give specific information about this
misrepresentation.  This Court therefore cannot determine whether
the misinterpretation was significant, and whether it was
intentional or merely inadvertent.  Plaintiff's general
allegation of a salary discrepancy is not enough to create a
genuine issue of material fact as to Plaintiff's age
discrimination claim.  As to Plaintiff's claim that Martin
challenged him about his expertise and that he was not allowed to
show examples of his previous work, Plaintiff also presents no
evidence that Williams, the candidate outside of Plaintiff's
protected classes, was allowed to show examples of her previous
work.  Nor does Plaintiff present any evidence that the panel did
not challenge, or would not have challenged, Williams's claimed

expertise if the panel members also felt that she had exaggerated.

Plaintiff's interview clearly was contentious, and it is clear that the other two panel members were aware of the tension between Plaintiff and Martin.  Plaintiff, however, has not identified any evidence that the source of the conflict between him and Martin was animus against him based on his age. The Ninth Circuit has recognized that managers' "favoritism" alone does not constitute age discrimination.  Coleman, 232 F.3d at 1290.  While the Court recognizes Plaintiff's genuine belief that he (as the best qualified candidate) should have been selected for the FMA position, the ADEA prohibits discrimination based on age – it does not "make it unlawful for an employer to do a poor job of selecting employees."  Id. at 1285.

This Court therefore finds that there are no genuine issues of material fact as to Plaintiff's age discrimination claim, and this Court concludes that Defendant is entitled to judgment as a matter of law.  Defendant's Motion is GRANTED as to Plaintiff's age discrimination claim.

As to Plaintiff's race and gender discrimination claims, Plaintiff points to the following evidence: Williams was on the Certificate of Eligibles even though her score fell below the cut off score; other male applicants with veterans preferences were not interviewed; Martin criticized the fact that

42

Plaintiff wore a business suit to the interview; Hare and Chong acknowledged that Plaintiff was more qualified than Williams and they gave Plaintiff a higher interview score; Martin gave a selection recommendation to Murayama even though she recused herself from making the selection herself; Martin has only hired employees who were either Asian or female; and only one person who works on the NAVFAC Pacific Financial Management Support Line is neither Asian nor female.  [Mem. in Opp. at 31-32.]

This Court will not consider Plaintiff's evidence regarding the race and gender of the employees on the NAVFAC Pacific Financial Management Support Line, [Chang Decl., Exh. 14,] or Plaintiff's evidence regarding other recruitment selections that Martin made, [id., Exh. 13,] because Plaintiff did not provide any information regarding the gender and racial background of the applicant pools for those positions.  Without such information, it is not possible to determine whether the number of Asians and females hired was disproportionate to the number of qualified persons who applied.  Thus, even when viewed in the light most favorable to Plaintiff, Plaintiff's statistics do not create an issue of fact as to whether Martin's or the Navy's selection processes were discriminatory against non-Asians and males, nor do they raise a genuine issue of material fact as to pretext in Plaintiff's application process.

As for the Certificate of Eligibles, [id., Exh. 2,]

43

this Court cannot infer from the information provided that Williams was not qualified for the FMA position, nor can this Court find that Williams's placement on the Certificate is evidence of discriminatory animus against non-Asians and/or males.  Although the Certificate states that the "Cut Off Score" is 92 and Williams has score of 80.00, [id. at 1, 3,] no evidence in the record explains what the term "Cut Off Score" signifies. In spite of her score, Williams's placement on the list indicates that HR deemed her eligible for the position.  She is second on the list and has a veterans preference.  [Id. at 3.]  All applicants besides Plaintiff were ranked lower than Williams. [Id. at 2 ("[Y]ou may not pass over a preference eligible (applicant with CPS, CP, XP or TP category designation) to select a lower-ranking nonpreference eligible (NV).  A lower ranking candidate is someone listed beneath another eligible on the referral list.").]  Tetsuji Willy and Harry Stevens are male applicants with veterans preferences who were ranked thirteenth and fourteenth on the Certificate, respectively.[12]  [Id. at 4.] Plaintiff argues that this indicates that the preparation of the

---

[12] The Certificate actually states that Harry Stevens does not have a veterans preference, [Chang Decl., Exh. 2 at 4,] but his resume states that he has a five-point veterans preference [id., Exh. 4 at 1].  Viewing the record in the light most favorable to Plaintiff, this Court accepts that Harry Stevens was entitled to a five-point veterans preference.  Even assuming that the Certificate of Eligibles erroneously omitted Stevens's veterans preference points, the error, in and of itself, does not constitute evidence of discriminatory animus.

Certificate was discriminatory against males.  Martin states that HR provided her with the Certificate and informed her that she could only consider the top two applicants on the list.  She also states that the list was compiled according to rules with which she is not familiar.  [Martin Decl. at ¶ 5.]  There is no evidence in the record suggesting that the persons who prepared the Certificate of Eligibles had discriminatory animus based on gender or race.  Viewing the record in the light most favorable to Plaintiff, the Certificate of Eligibles does not raise a genuine issue of material fact as to pretext in Plaintiff's non-selection.

Plaintiff's remaining evidence does not constitute specific and substantial evidence of pretext.  The fact that Martin criticized Plaintiff's attire does not indicate that she discriminated against him based on his race or gender.  As this district court has recognized, "Title VII is not 'a general civility code for the American workplace.'"  Jura v. Cnty. of Maui, Civ. No. 11-00338 SOM/RLP, 2012 WL 5187845, at *7 (D. Hawai`i Oct. 17, 2012) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)).  Moreover, "'personal animosity is not the equivalent of sex [or race] discrimination,' and a plaintiff 'cannot turn a personal feud into a sex [or race] discrimination case.'"  Id. (quoting Succar v. Dade Cnty. Sch. Bd., 229 F.3d 1343, 1345 (11th

Cir. 2000)).

        The fact that Hare and Chong recommended Williams over Plaintiff, even though they acknowledged that Williams had more technical expertise and they scored him higher during the interview, does not constitute specific and substantial evidence of pretext.  Although Hare and Chong considered Plaintiff more qualified in certain areas, they considered Williams more qualified in other areas.  No evidence in the record suggests that their stated reasons for their recommendations of Williams were merely pretext for discriminatory animus based on race or gender.

        Nor does Martin's selection recommendation after her recusal establish pretext.  Viewing the evidence in the light most favorable to Plaintiff, Martin had personal animosity toward Plaintiff but there is no evidence that her animosity was because of Plaintiff's race or gender.  Moreover, even assuming Murayama should not have considered Martin's recommendation, Hare's and Chong's recommendations were consistent with Martin's, and there is no evidence that Martin influenced Hare and Chong.  The three only briefly discussed the interview, and they did not come to any conclusion.  Before each recommended Williams's selection, neither Hare nor Chong was aware that Plaintiff had accused Martin of discriminating against him.  [Hare Decl. at ¶¶ 5-6; Chong Decl. at ¶¶ 5-6.]

46

Thus, none of the evidence cited above, either individually or together with the other evidence in the current record, raises a genuine issue of material fact as to whether the stated reasons for Plaintiff's non-selection were merely pretext for race or gender discrimination. This Court therefore finds that there are no disputes of material fact and concludes that Defendant is entitled to judgment as a matter of law as to Plaintiff's race and gender discrimination claims. Defendant's Motion is GRANTED as to Plaintiff's race and gender discrimination claims.

**CONCLUSION**

On the basis of the foregoing, Defendant's Motion for Summary Judgment, filed on April 18, 2013, is HEREBY GRANTED. The Court DIRECTS the Clerk's Office to enter judgment in favor of Defendant and close the case.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 29, 2013.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**CALVIN PHILLIPS V. RAY MABUS, ETC; CIVIL NO. 12-00384 LEK-RLP; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**